UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DOW CHEMICAL EMPLOYEES CREDIT
UNION,

       Appellant,                               Case No.10-14611 (Appeal)
                                                  Hon. Thomas L. Ludington

v.

ALAN SCOTT COLLINS,                          Bankruptcy Case No. 10-20718

       Appellee,
_____/

## **OPINION AND ORDER AFFIRMING BANKRUPTCY COURT DECISION**

Appellant Dow Chemical Employees Credit Union (the "Credit Union") appeals the United States Bankruptcy Court for the Eastern District of Michigan's (the "Bankruptcy Court") confirmation of Appellee Alan Collins's ("Collins") third Chapter 13 bankruptcy plan. The Credit Union alleges that the Bankruptcy Court erred in confirming a plan which treated the Collins's proposed expense for cigarettes as reasonably necessary for his maintenance or support and that the plan was not proposed in good faith. The confirmed plan included $300/month in cigarette expenses and $300/month in recreation expenses. For the reasons provided herein, the decision of the Bankruptcy Court will be affirmed.

### I. Facts

Collins filed a voluntary Chapter 13 bankruptcy petition on February 26, 2010. According to his bankruptcy schedules, Collins lives and works in Midland as an implementation specialist at the Dow Chemical Company. His wife is a bookkeeper at Reliable Plumbing. Together they've earned over $80,000.00 each year for the past few years. The Collins have three minor children.

On October 7, 2008, Collins opened an unsecured credit card account with the Credit Union.

By the time he sought bankruptcy protection, Collins had a balance on this credit card account of $11,323.71. Collins also maintained two other secured loans with the Credit Union: a loan secured by a mortgage on the family home and an automobile loan. Proofs of claim were filed with the Bankruptcy Court by the Credit Union for all three loans.

In his initial bankruptcy schedules filed with the court on March 12, 2010, Collins listed his monthly income as $4,496.56 and his non-filing spouse's monthly income as $1,421.84 on his Schedule I or, taken together, $5,918.41 each month. On his Schedule J, Collins stated that his family spent $4,722.41 each month, including $400.00 for recreational purposes and $300.00 cigarettes. Collins also initially included payments for a loan secured by a fifth-wheel trailer[1] in the amount of $395.91 per month as an expense. Based on the calculations included in Collins's Schedules I and J, he had a monthly net income of $1,196.00.

Collins's original Chapter 13 bankruptcy plan was filed on March 12, 2010. His bankruptcy schedules were filed the same day. He used his monthly net income total of $1,196.00 as the amount he would pay into the plan each month for sixty months. This plan proposed to pay unsecured creditors approximately 32% of their claims. Both the Trustee and the Union objected to this plan, and the plan was modified on April 19, 2010. Collins then amended his Schedule I to increase his monthly household income to $6,565.29, reflecting a performance bonus he had received. He also increased the expenses on his Schedule J to $5,365.29, which included increasing his transportation expense from $450.00 to $550.00 and his food expense from $700.00 to $900.00. These changes

---

[1]Fifth-wheel trailers are recreational vehicles designed to be affixed and towed by a pickup or mid size truck equipped with a special hitch, very similar to the hitch on a Semi-Truck only smaller. 5th Wheel RV Description, http://www.precisionframe.com/rvdetail/5thwheel.php (last visited July 8, 2011).

resulted in his monthly net income under the modified plan remaining approximately the same.

The Credit Union objected to Collins's modified plan on grounds that the he was not paying all of his disposable income into the plan. In particular, the Credit Union objected to Collins's intent to continue paying for the fifth-wheel trailer, for cigarettes, and for recreation. At a confirmation hearing held August 5, 2010, the Bankruptcy Court ordered Collins to amend his plan to eliminate the payments for the fifth-wheel trailer. Collins amended his plan accordingly by removing the fifth-wheeler payments, but continued to budget $300/month for cigarettes and $400/month for recreation.  As a result, the monthly payments into the plan remained at approximately $1,200.00. The Trustee and the Credit Union objected to this second modified plan, again on grounds that Collins was not paying all of his disposable income into the plan.

At the confirmation hearing on November 4, 2010, the Bankruptcy Court addressed the issue of the reasonable necessity of cigarette expenses.  The Bankruptcy Court noted that "everyone agrees that smoking is not a required activity" and that there is "a significant amount of scientific evidence that smoking is bad for you." (Appellant Br. Ex. A.) The Bankruptcy Court then confirmed Collins's bankruptcy plan, with a few qualifications. First, Collins's recreation budget was reduced from $400.00 to $300.00 per month. Second, the Credit Union believes the Bankruptcy Court provided that Collins would have the opportunity to enter a cigarette smoking cessation program before the middle of the plan's duration. If he entered into the program, the Bankruptcy Court would decrease his plan payments by the amounts he was paying for the program. Following his successful completion of the smoking cessation program, Collins would then be required to amend his Schedule J to reflect the reduction of his cigarette expenses.  Collins, however, contends that the Bankruptcy Court ruled that if he were to quit smoking, the monetary difference would be split between Collins

and his creditors, essentially raising Collins's payments by $150 per month if he completed a smoking cessation program before the middle part of his plan. The Credit Union has now appealed confirmation of the plan.

## II.  Legal Standard

Chapter 13 of the Bankruptcy Code, 11 U.S.C. §1301 et. seq., allows a debtor to receive a discharge of his debts if he pays his creditors a portion of his monthly income in accordance with a three to five year court-approved plan. In order for a Chapter 13 bankruptcy plan to be approved by the bankruptcy court, it must meet the requirements set forth in 11 U.S.C. § 1325. Section 1325 sets out a number of rules intended to protect creditors and ensure they are repaid the maximum amount the debtor can afford. For instance, Section 1325 requires that the plan have been proposed in good faith,11 U.S.C. § 1325(a)(3), that the unsecured creditors receive as much under the bankruptcy plan as they would in a Chapter 7 bankruptcy, 11 U.S.C. § 1325(a)(4), and that secured creditors retain their liens over the duration of the plan. Perhaps most importantly for unsecured creditors, 11 U.S.C. § 1325(b)(1) provides that if an unsecured creditor objects to the confirmation of the plan, then

> the court may not approve the plan unless, as of the effective date of the plan –
>
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

The Bankruptcy Code defines "disposable income" in 11 U.S.C. § 1325(b)(2), which states that disposable income shall mean the current monthly income received by the debtor, other than

certain child support payments, less amounts "reasonably necessary to be expended" for the "maintenance or support of the debtor or a dependant of the debtor," domestic support obligations, qualified charitable contributions, and certain business expenses.

The disposable income test was added to Chapter 13 of the Code by the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA"). Pub. L. No. 98-353, 98 Stat. 333 (1984). The consumer credit industry played a significant role in advising Congress on the need for changes to the 1978 Bankruptcy Code. *See* Jeffrey W. Morris, *Substantive Consumer Bankruptcy Reform in the Bankruptcy Amendments Act of 1984*, 27 Wm. & Mary L. Rev. 91, 161 (1985). The consumer credit industry believed that the pre-BAFJA Code favored debtors in two principal ways. First, they believed that consumers with few assets and large incomes were choosing to discharge debts under a Chapter 7 liquidation rather than to reorganize and repay creditors in a Chapter 13 plan. Joseph P. Corish & Michael J. Herbert, *The Debtor's Dilemma: Disposable Income as the Cost of Chapter 13 Discharge in Consumer Bankruptcy*, 47 La. L. Rev. 47, 54 (1987). Second, the consumer credit industry believed that Chapter 13 allowed for "cheap" reorganizations, because there was no requirement that the amount paid to unsecured creditors exceed what they would have received in a Chapter 7 liquidation. Irving A. Breitowitz, *New Developments in Consumer Bankruptcies: Chapter 7 Dismissal on the Basis of "Substantial Abuse"*, 59 Am. Bankr. L.J. 327, 327-28 (1985). One consumer credit industry recommendation was that "to obtain a discharge, all consumer debtors who had disposable income be required to pay their creditors all of their income in excess of a somewhat adjusted version of the federal poverty level for a period of several years." Corish & Herbert, 47 La. L. Rev. 47, 54. Under BAFJA, the consumer credit industry succeeded in getting section 1325(b) added to the Code, which they believed would force debtors in a Chapter

13 reorganization to commit more than a nominal amount of their income to the plan. *See* Brian G. Smooke, Comment, *Section 1325(b) and Zero Payment Plans in Chapter 13*, 4 Bankr. Dev. L.J. 449, 457-63 (1987); Karen Gross, *Preserving a Fresh Start for the Individual Debtor: The Case for Narrow Construction of the Consumer Credit Amendments*, 135 U. Pa. L. Rev. 59, 61 n.4 (1986). The disposable income test was intended, at least in part, to increase the dividend to unsecured creditors, and is often referred to as the ability-to-pay test. *See In re Ashton*, 85 Bankr. 766, 768 (Bankr. S.D. Ohio 1988).

Because BAFJA lacks a formal legislative history, Bankruptcy Courts have debated whether Congress intended courts to use an objective standard to determine reasonably necessary expenses under the disposable income test. James Rodenberg, *Reasonably Necessary Expenses or Life of Riley?: The Disposable Income Test and a Chapter 13 Debtor's Lifestyle*, 56 Mo. L. Rev. 617, 629. The courts have interpreted the disposable income test as a congressional attempt to settle the issue of how much income a Chapter 13 debtor must commit to his Chapter 13 reorganization plan. *See In re Navarro*, 83 Bankr. 348, 354 (Bankr. E.D. Pa. 1988). Courts have been unable to decide whether Congress intended the use of an objective standard to determine necessary expenses. Congress's refusal to clarify the meaning of "reasonably necessary" could be considered an indication that Congress intended courts to use discretion in evaluating expenses under a Chapter 13 plan. 56 Mo. L. Rev. 617, 629. It is significant, however, that Congress did not adopt the consumer credit industry's recommendations of either a poverty level standard of living for a Chapter 13 debtor or a forced Chapter 13 reorganization. Corish & Herbert, 47 La. L. Rev. 47, 55. Indeed, it is fair to presume from the circumstances that Congress may have instead been expressing a desire to allow bankruptcy courts to evaluate expenses on a case-by-case basis by not requiring

specific levels of expenditure or mandatory Chapter 13 for certain types of debtors. 56 Mo. L. Rev. 617, 630.

In reviewing a bankruptcy appeal, the district court should accept as correct the Bankruptcy Court's findings of fact, unless they are clearly erroneous. Fed. R. Bankr. P. 8013; *see In re Wingerter*, 594 F.3d 931, 935-36 (6th Cir. 2010). The Bankruptcy Court's conclusions of law are reviewed de novo. *In re Wingerter*, 594 F.3d at 935-36. Issues of statutory interpretation are conclusions of law and are reviewed de novo. *United States v. Springer*, 609 F.3d 885, 889 (6th Cir. 2010); *In re Westfall*, 599 F.3d 498, 501 (6th Cir. 2010).

### III. Discussion

### A

### 1

A court's interpretation of the Bankruptcy Code should start "where all such inquiries must begin: with the language of the statute itself." *Ransom v. FIA Card Services, N.A.*, - - - U.S. - - -, 131 S. Ct. 716, 724 (2011) (quoting *United States v. Ron Pair Enterprises, Inc*., 489 U.S. 235, 241 (1989)). In this case, the statutory provision to be interpreted defines "disposable income" as the current monthly income received by the debtor less amounts "reasonably necessary for the maintenance and support of the debtor or the debtor's dependants." 11 U.S.C. § 1325(b)(2). The terms "maintenance" and "support" are not defined in the Bankruptcy Code and the Credit Union submits that the Court must thus look to the plain and ordinary meaning of these words.

The Credit Union contends that the context of the language "maintenance and support" suggests that these terms mean the same thing as what one would mean when one talks about "supporting and maintaining" a family or a dependant: providing for their material needs. For

instance, Webster's New Universal Dictionary (Second Edition) defines "maintenance" as "means of support or sustenance; livelihood; as, her job provided a mere maintenance." The relevant definition of "support" reads, "to maintain with the necessary means of living; to provide for; to supply a livelihood to; as, to support a family; to support a son at college." Moreover, Dictionary.com provides a similar definition for support: "5. to maintain (a person, family, establishment, institution, etc.) by supplying with things necessary to existence; provide for: to support a family," and for maintenance: "4. means of upkeep, support, or subsistence; livelihood: to provide a comfortable maintenance."

The Credit Union emphasizes that the terms "maintenance" and "support" are further modified in the statute by the phrase "reasonably necessary for," which is not defined by the Bankruptcy Code. The Credit Union contends that the most natural understanding of the word "necessary" is "essential or required." Thus, the plain meaning of the statute is that only expenses reasonably required for a debtor's sustenance and well-being are allowable deductions in determining disposable income. The structure of the statute suggests that there are two distinct questions a court must ask in determining whether an expense is allowable. The Court must first determine whether an expense is actually for the maintenance and support of the debtor or the debtor's household. If so, then the court must determine whether the expense is reasonably necessary for that purpose. If the answer to either question is a negative, then the expense cannot be used to determine disposable income.

This appeal involves the question of what types and amounts of expenses should be considered "reasonably necessary" for the debtor's maintenance and support. In the plan confirmed by the bankruptcy court, Collins treated the money he spent on his spouse's cigarettes as a necessary

expense, and was thus able to prevent that money from being repaid to his unsecured creditors. The Credit Union argues that the plan's treatment of cigarette expenses as such, however, is unsupported by the language or intent of the Bankruptcy Code and cigarettes should not be considered "reasonably necessary for the maintenance and support of the debtor" under any interpretation of §1325(b) because cigarettes are not essential for a comfortable lifestyle and are actually harmful to the Debtor's health and well being. Thus, the Credit Union argues, money budgeted for cigarettes is part of a debtor's disposable income and therefore must be applied towards paying the Debtor's unsecured creditors. Collins' plan as confirmed allows him to deduct $300.00 for recreation and $300.00 for cigarettes. The Credit Union argues that the amount of these expenses, even if they were for maintenance and support of the debtor, are not "reasonably necessary," are extravagant and cannot be supported by the language or intent of the Bankruptcy Code. The Credit Union asserts that Collins' bankruptcy plan should not have been confirmed and requests that the Court reverse the Bankruptcy Court's confirmation of Collins' bankruptcy plan.

Furthermore, the Credit Union argues that allowing a debtor to budget cigarettes as a necessary expense would contravene the purpose and intent of the Bankruptcy Code and the 2005 Bankruptcy Abuse Prevention and Consumer Protection Act amendments. Congress designed Chapter 13 to encourage debtors to make a sincere effort to repay as much of their pre-petition debts as they can reasonably afford from their future income. *In re Warner*, 115 B.R. 233 (Bankr. C.D. Ca, 1989). This purpose is undermined when a debtor is allowed to spend significant portions of his income on discretionary expenses like cigarettes. It is unfair to unsecured creditors to allow a debtor to continue to pay for an expensive habit, as such purchases reflect an ability to pay a greater amount into the plan. Although making such a determination may reflect a court's judgment about the

reasonableness of a debtor's budget, the Credit Union contends that such a determination is justified because the Bankruptcy Code itself places restrictions on the types and amounts of expenses used in determining disposable income.

In sum, the Credit Union argues that the plain meaning and purpose of the Bankruptcy Code clearly does not allow a debtor to exclude money budgeted for cigarettes from his disposable income. Thus, the Credit Union contends that the Bankruptcy Court improperly confirmed Collins' plan without establishing that the costs for cigarettes were reasonably necessary for the maintenance and support of Collins and his dependants.

**2**

In the event cigarette expenses are not per se unreasonable, the Credit Union also contends that the amounts budgeted by Collins in his bankruptcy plan for cigarettes and recreation are not reasonably necessary. As stated above, one of the main purposes of 11 U.S.C. § 1325 is to allow creditors to be repaid the maximum possible amount from a debtor's monthly income. The Bankruptcy Code achieved this purpose, in part, by requiring the Debtor to "tighten his belt" by limiting his expenditures to solely those which are "reasonably necessary" for a Debtor's maintenance or support. *See In re McNichols*, 249 B.R. 160 (Bankr. N.D. Ill. 2000). Indeed, "even nondiscretionary expenditures such as for food and shelter can reflect discretionary lifestyle choices", and may accordingly be considered too high to be reasonably necessary, even if they are clearly for a debtor's maintenance or support. *In re Gonzales*, 157 B.R. 604 (Bankr. E.D. Mich 1993).

The Credit Union contends that determination of whether an expense is too high to be "reasonably necessary" is a fact intensive inquiry. *See In re Miller*, 361 B.R. 302 (Bankr. N.D. Ala

2007). It is well established that a Chapter 13 debtor does not have unbridled discretion under the "disposable income" test to carve out for himself and his family whatever lifestyle he may choose, but must instead undergo a degree of belt-tightening. *In re McNichols*, 249 B.R. 160 (Bankr. N.D. Ill. 2000). "Modification of his pre-petition lifestyle is often the price that the Chapter 13 debtor must pay to satisfy the 'disposable income' test and to obtain discharge of his pre-petition debt in Chapter 13." *In re McGilberry*, 298 B.R. 258 (Bankr. M.D. Pa. 2003). An unreasonably large amount devoted to discretionary expenses (such as recreation, gifts, entertainment, newspapers, etc.) may support a finding of substantial abuse and is not allowed under the Bankruptcy Code in determining "disposable income." *See In re Burger*, 280 B.R. 444 (Bkrtcy. S.D. Ind. 2002).

The Credit Union believes that Collins has budgeted too much money for his recreation and cigarettes together. First, the Credit Union finds Collins' distinguishing between a cigarettes expense and a recreation expense on his Schedule J to be superficial and inappropriate because cigarettes cannot be categorized as anything but recreational in use. Here, the amounts budgeted by Collins for recreation and cigarettes essentially grants him a budget of $600.00/month for hobbies, habits, and fun. According to the Credit Union, this amount is not reasonably necessary for the Debtor's maintenance or support. In support of this, the Credit Union emphasizes that bankruptcy courts have regularly found recreation expenses of much smaller amounts to be unreasonable. *See In re Carney*, No. 07-31690 (Bankr. N.D. Ohio, Dec. 5, 2007) (finding $400/month in recreation which included cigarette expenses unreasonable); *In re Siemen*, 294 B.R. 276 (Bankr. E.D. Mich. 2003) (finding a yearly recreational expense of $2,640, or $220.00/month, "extravagant" and unreasonable).

The Credit Union contends that Collins's budgeted amount for cigarettes and recreation are particularly egregious when one considers the amounts Collins budgeted for his other expenses, such

-11-

as $900.00/month for food, $550.00/month for transportation, $160.00/month for clothing, and $60.00/month in haircuts. Some of these expenses, such as food and transportation, were increased in Collins's amended Schedules after he was directed by the Bankruptcy Court to add his bonus payment. The Credit Union suggests that this indicates that the budgeted amounts are more fluid and less concrete than the debtor would suggest.

Finally, the Credit Union argues that Collins did not propose his Chapter 13 plan in good faith. The Credit Union did not, however, bring the issue of bad faith before the Bankruptcy Court and thus cannot bring it before this Court on appeal. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976) (finding that, as a general rule, appellate courts do not consider any issue not passed upon below). The Credit Union has not demonstrated any extraordinary circumstances which warrant a departure from the general rule.

**B**

Collins first emphasizes that the Credit Union's explanation of the definitions of "reasonable" and "necessary" incorrectly equates cigarette smoking with luxury items that are not "reasonably necessary" for the debtor's support or his dependants. *See In re Short*, No. 08-11224, 2008 WL 5751873, at *4 (Bankr. N.D. Ohio Sept. 11, 2008) (finding that cigarettes are not a luxury item). Bankruptcy courts are regularly confronted with deciding whether or not a debtor's expenses are excessive or unreasonable and generally bankruptcy courts are not to substitute their values for those of the debtor. *In re Roppo*, 442 B.R. 888, 895 (Bankr. N.D. Ill. 2010). However, there are exceptions. A court should question a debtor's judgment when:

> (1) the debtor proposes to use income for luxury goods or services; (2) the debtor proposes to commit a clearly excessive amount to non-luxury goods or services; (3) the debtor proposes to retain a clearly excessive amount of income for discretionary purposes; (4) the debtor proposes expenditures that would not be made but for a

> desire to avoid payments to unsecured creditors; and (5) the debtor's proposed expenditures as a whole appear to be deliberately inflated and unreasonable.

*Id.* at 895 (citing *In re Navarro*, 83 B.R. 348, 355-56 (Bankr. E.D. Pa.1988) (determining disposable income under § 1325( b)). In general, 11 U.S.C. § 1325(b) should not be considered a mandate for a court to superimpose its values and substitute its judgment for those of the debtor on basic choices about appropriate maintenance and support." *Sarasota, Inc. v Weaver*, No. 04-1557, 2004 WL 2514290, at *4 (E.D. Pa. Nov. 5, 2004) (specifically finding that cigarette expenses were not per se unreasonable because determination of what should not be included in a debtor's budget should be left to Congress).

In *In re Woodman*, 287 B.R. 589 (Bankr. Me. 2003), the court considered two consolidated Chapter 13 cases, Woodman and Moulton, wherein an unsecured creditor objected under the § 1325(b)(1) disposable income requirement because of the debtors' high cigarette purchases. The court overruled the creditor's objections in both cases. The unsecured creditor, much like the Credit Union, first contended that tobacco should not be listed on Schedule J and that a tobacco expense is per se unreasonable. *Id.* at 592. The court disagreed and found that branding one kind of expenditure or another as "never" reasonably necessary, as "always" coming from disposable income can clothe subjective moral judgments with the force of law. *Id.* The court recognized the "slippery slope" this could create in favor of finding a Chapter 13 debtors expenses unreasonable, such as alcohol, lottery tickets, cosmetics, candy bars, or even scented soap unreasonable, no matter how minimal. *Id.* The result would effectively have bankruptcy courts outlawing smoking for Chapter 13 debtors, even though it is an otherwise lawful activity. *Id.* at 593. Collins argues that despite the negative health effects of smoking cigarettes, cigarettes are legal and it is for Congress to decide whether or not they should be included in a debtor's budget; it is not the role of the court

to put make lifestyle choices for the debtors. *See* Daniel J. Von Weihe, *Necessary or Excessive: The Standard of "Reasonably Necessary" in Chapter 13 Bankruptcy*, 17 J. Corp. L. 639, 653(1992) (noting that "[i]t is questionable whether courts should be making lifestyle judgments based on personal opinions without the guidance or instruction of legal standards" and that when Congress uses vague statutory terms like the reasonably necessary test, "without legislative deliberation or direction for the courts, it is unrealistic to expect that application of the Code will be uniform.") (citing Smooke, 4 Bankr. Dev. J. 449, 466; Corish & Herbert, 47 La. L. Rev. 47, 82; .

Collins also emphasizes that the Credit Union uses the same cases to support its argument in its appellate brief regarding his budget for cigarettes and recreation as in its brief in opposition to confirmation. First, the Credit Union relies on *In re McNichols* to establish the fact that debtors must tighten their"belts" when in a Chapter 13 bankruptcy. Collins concedes that this is correct, but notes that the debtor in *In re McNichols* had expenses for a housekeeper and a timeshare, while only repaying ten percent of the debt owed to his unsecured creditors. In the instant case, Collins contends he is paying approximately sixty-nine percent of the debt owed to his unsecured creditors.

Collins also argues that the cases cited by the Credit Union are distinguishable. In *In Re Carney*, No. 07-31690, 2007 WL 4287855 (Bankr. N.D. Ohio, Dec. 5, 2007), a joint Chapter 7, the court dismissed the case (or allowed the debtors to convert to a chapter 13) not because their recreation expense were high, but because a reaffirmation agreement they had signed for a camper had different amounts for income and expenses than was reported on their Schedules I and J, demonstrating they could afford this luxury item, and not pay back any of their unsecured creditors. In *In Re Siemen*, 249 B.R. 276 (Bankr. E.D. Mich. 2003), the debtors were paying expenses for adult children and grand children, who had income themselves to pay their own expense. The court did

indicate that the recreation expense was extravagant, but it was in conjunction with consideration of the other expenses.

In contrast to the cases cited in the Credit Union's brief, Collins does not have a luxurious lifestyle. Collins submits that he and his non-filing spouse smoke cigarettes and use their recreation budget with their three minor children. Their recreation expenses mainly are largely used for their children's activities. Collins's eldest daughter plays both school-affiliated and league softball. The Collins family travels together to her games. Collins's eldest daughter will also be taking driver's training soon creating an addition automobile insurance expense. Mr. and Mrs. Collins are in a bowling league and occasionally enjoy a date night out without the children as their separate recreation. Collins thus contends that his budget for recreation and cigarettes for a family of five is reasonable and necessary to his and his family's support and maintenance.

Collins also contends that not including cigarettes as a separate expense was appropriate. In *Sarasota v. Weaver*, the debtor had consolidated both her food budget and her cigarette budget into the overall "food" category on Schedule J. 2004 WL 2514290, at *4. Sarasota objected. The court concluded that "[a]t Debtor's confirmation hearing, the Bankruptcy Court was made aware that cigarette expenses accounted for the $200.00 increase in Debtor's food line-item. Therefore, in approving debtor's plan, the Bankruptcy Court concluded that the $200.00 cigarette expense was reasonably necessary for Debtor's support and maintenance under § 1325(b)(2)(A). The debtor's precise classification of the cigarette expense was irrelevant to that determination. *Id.* Collins contends that it is similarly irrelevant that he separately itemized his recreation and cigarette expenses. By virtue of confirming the plan, the Bankruptcy Court concluded that all of his budget items were reasonably necessary for his support and maintenance under 11 U.S.C. § 1325(b)(2)(A)

and Collins requests that the Court confirm the Bankruptcy Court's confirmation on the plan.

**B**

Finally, Collins addresses the Credit Union's argument that his cigarette and recreation expenses are "particularly egregious" when compared to other budget items. The Credit Union did not object to any of budget items other than Collins's cell phone service during the proceedings before the Bankruptcy Court. Furthermore, the objection to the cell phone service was not mentioned in the Credit Union's brief in opposition to confirmation, and the Credit Union's attorney withdrew it on the record at one of the many confirmation hearings. The Credit Union also did not request that the Bankruptcy Court to look at the overall budget as a whole, just at the recreation and cigarettes expenses. As a result, Collins contends that the comparison to the other items in the bankruptcy plan's budget is improper.

## IV.  Summary of Conclusions

The Credit Union's first objection asserts that cigarette expenses are per se unreasonable, effectively seeking a prohibition on smoking for Chapter 13 debtors. This objection raises a question of law, which is entitled to de novo review. *In re Wingerter*, 594 F.3d at 935-36. Courts have generally not concluded that expenses for cigarettes are per se unreasonable because cigarette smoking is currently a lawful activity. *See, e.g.*, *In re Mars*, 340 B.R. 844, 850 (Bankr. W.D. Mich. 2006). Courts have been reluctant to brand any particular kind of lawful expense as never reasonably necessary because "such an approach can clothe subjective moral judgments with the force of law." *In re Woodman*, 287 B.R. at 592-93 Furthermore, the Credit Union has not identified any case authority for the proposition that cigarette expenditures are per se unreasonable. If such a determination is appropriate, it is a policy decision to be addressed by Congress.

The Credit Union's second objection is to the Bankruptcy Court's factual finding that $300 is a reasonable amount for monthly cigarette expenses for Collins and his wife. As previously noted, the Bankruptcy Court's findings of fact are to be accepted on appeal unless they are clearly erroneous. Fed. R. Bankr. P. 8013; *see In re Wingerter*, 594 F.3d at 935-36. Courts have often considered the other expenses claimed by the debtor when deciding whether a recreational or cigarette expense is reasonable. The Bankruptcy Court did not commit clear error in concluding that $300.00 is a reasonably necessary amount for recreation, especially in light of the fact that Collins has three minor children. Moreover, the Bankruptcy Court found Collins's assessment of his monthly cigarette expenditures to be credible, and the Credit Union has not presented evidence that the allotted amount spent on cigarettes per month is an excessive amount for a two people who are already smokers. *See also In re Short*, No. 08-11224, 2008 WL 5751873, at *4 (Bankr. N.D. Ohio Sept. 11, 2008). There is also no evidence that Collins is attempting to deliberately inflate or include a cigarette expense in order to avoid payment to creditors, as he will contribute more than $40,000 to unsecured creditor claims after paying his secured creditor under the plan–resulting in nearly two-thirds of the unsecured creditor's claims being paid. Bankruptcy judges are experienced in making decisions about the type and amount of expenditures that are reasonable and necessary for the support and maintenance of a debtor. In the instant case, the Bankruptcy Court's factual findings are not clearly erroneous and the Court will affirm the Bankruptcy Court's confirmation of Collins's third Chapter 13 bankruptcy plan.

Accordingly, it is **ORDERED** that the Bankruptcy Court's confirmation of Appellee Alan Collins's third Chapter 13 bankruptcy plan is **AFFIRMED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: July 14, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 14, 2011.

s/Tracy A. Jacobs
TRACY A. JACOBS